IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

VICTOR M. JAVITCH, Receiver,

                Plaintiff,            Case No. 3:04 CV 1487

   -vs-

                                    MEMORANDUM OPINION

NEUMA, INC., et al.,

                Defendant.

KATZ, J.

This matter is before the Court on Defendant's motions[1] to dismiss, Plaintiff's response and Defendant's reply thereto. For the reasons stated below, Defendant's motion is denied.

### BACKGROUND

This is one of many cases arising out of viatical insurance litigation which has been ongoing since 1999, resulting in two investor classes and multiple criminal convictions. *See Liberte v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio). In that case, Liberte Capital Group ("Liberte") and Alpha Capital Group ("Alpha") charged that James A. Capwill ("Capwill"), through the entities Viatical Escrow Services, LLC ("VES") and Capital Fund Leasing ("CFL") unlawfully diverted investor funds escrowed for insurance premiums or awaiting placement in viatical contracts. The Court appointed General Receiver, Victor M. Javitch[2] ("Javitch"), initiated

---

[1] The first motion to dismiss (Doc. No. 9) was followed by the filing of Plaintiff's First Amended Complaint. Thereafter, Defendants filed a second motion to dismiss (Doc. No. 19).

[2] Initially Frederick M. Luper was appointed Receiver on July 15, 1999; however, effective July 26, 2000, Javitch replaced Luper in that capacity. On August 3, 2004, pursuant to a Court order,
                                                                                                  (continued...)

suits against agents, brokers, brokerage houses, banks and various insurers all with an eye toward marshaling assets on behalf of the investors, the ultimate victims in this debacle.

The Receiver brings this suit against Nuema, Inc., David Binter, Nuema's president, and John Does 1 through 12. The allegations contend that Nuema, as a viatical settlement broker, sold fraudulent policies to Liberte, which turned out to be worthless to the investors ultimately placed in those investments. As a result, the Receiver brings causes of action sounding in: (1) RICO, 18 U.S.C. §§ 1961, 1962, and 1964(c); (2) unjust enrichment/quantum meruit; (3) civil conversion; (4) common law fraud; (5) fraudulent misrepresentation; and (6) negligent misrepresentation.

The Defendants move for dismissal under Fed. R. Civ. P. 12(b)(2) on the basis that this Court lacks personal jurisdiction over them.

### DEFENDANTS' MOTION TO DISMISS

*1. Standard Under Fed. R. Civ. P. 12(b)(2).*

A challenge to personal jurisdiction is assigned to Fed. R. Civ. P. 12(b)(2) which states as follows:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or a third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person. . .

In response to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir.

---

[2](...continued)
the duties of the General Receiver were modified, transferred and assumed by the Alpha Receiver, William T. Wuliger. (*Liberte*, Doc. No. 2243.)

2

1996). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). The method selected is left to the discretion of the district court. *Id.* Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (quoting *Weller v. Cromwell Oil Co.*, 504 F.3d 927, 930 (6th Cir. 1974); *Serras*, 875 F.3d at 1214. The district court's choice determines the weight the plaintiff's burden. *See Dean*, 134 F.3d at 1272; *Theunissen*, 935 F.2d at 1458; *Serras*, 875, F.2d at 1214.

> "When . . . a district court rules on a jurisdictional motion to dismiss . . . without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction. Furthermore, a court . . . does not weigh the controverting assertions of the party seeking dismissal . . . ."

*Dean*, 134 F.3d at 1272 (quoting *Compuserve*, 89 F.3d at 1262). Dismissal is only proper if all the facts taken together fail to establish a *prima facie* case for personal jurisdiction. *Compuserve*, 89 F.3d at 1262.

"In dealing with a diversity case, we look to the law of the forum state to determine whether personal jurisdiction exists."[3] *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir.

---

3

(continued...)

2000). *See also Nationwide*, *Nationwide Mut. Ins. Co. v. Tryg Int'l*, 91 F.3d 790, 793 (6th Cir. 1996) (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1298 (6th Cir. 1989). That is, personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Materials Users*, *Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). In *Bird*, however, the court stated:

> We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." Id. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird*, 289 F.3d at 871-72.

Personal jurisdiction may be based on either general or specific jurisdiction. *Id.* at 873. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the

---

[3](...continued)
The Court notes that Plaintiff's Complaint also alleges that the Defendants, including Binter, have violated RICO, which provides a broader test of personal jurisdiction than that provided for in *Mohasco*. *FRC Int'l v. Taifun Feuerloschgeratebaus und Vertriebs GmbH*, No. 3:01 CV 7533, 2002 WL 31086104, at *6 n.1 (N.D. Ohio Sept. 4, 2002) (citing *Suarez v. McGraw*, 71 F. Supp. 2d 769, 777 (N.D. Ohio 1999)).

defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* at 738

(quoting *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir.

1989)). In contrast, specific jurisdiction is proper under circumstances "where a State exercises

personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts

with the forum. *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)). Specific jurisdiction may be based on a

single act. *Nationwide*, 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 2 L.

Ed. 223, 78 S. Ct. 199 (1957)).

With these legal precepts in mind, the Court now turns to the issues at hand.

*2. Discussion*

A. <u>Ohio's Long-Arm Statue</u>

Under Ohio Rev. Code § 2307.382:

(A) A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . .

The Ohio Supreme Court has interpreted the term "transacting business" for purposes of

personal jurisdiction broadly as follows:

"Transact," as defined by Black's Law Dictionary (5 Ed.1979) 1341, " * * * means to *prosecute negotiations;* to carry on business; *to have dealings * * *. The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business*

5

>  *negotiations* which have been either wholly or partly brought to a conclusion * * *." (Emphasis added.)

*Kentucky Oakes Mall Co. v. Mitchell's Formal Wear, Inc.,* 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990), *cert. denied,* 499 U.S. 975 (1991). Moreover, "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544 (1994).

Defendants dispute that their conduct satisfies Ohio's long-arm statute as they were never physically present in Ohio, therefore, they were incapable of causing tortious injury. Additionally, the Defendants dispute they ever transacted business in Ohio as they do not have an office in Ohio, are not licensed to do business here and do not direct business operations from the forum state nor have Defendants ever visited the forum state.

The amended complaint alleges a purchase of policies from the Defendant viatical broker who is alleged to have represented they were selling valid policies but in fact were procured via fraudulent conduct. Defendants also directed copies of the viators' medical records and policies to be directed, via facsimile, to Liberte's office in Ohio for review in contemplation of the proposed transaction. ( Binter Declaration at ¶ 8.) Following receipt and review of this information, Liberte advised it was satisfied and directed Defendants to begin transferring ownership of the policies to Liberte. (Id.) In return, the Defendants received payments from Liberte of $37,996.77, $79,033.00, $9,571.00, and $17,077.44 for the purchase of four separate policies. (Id. at ¶ 9.) Given the broad definition of transacting business, the direction of documents to Ohio for the purpose of a business decision and the ultimate payment of $143,678.21 for four life insurance policies, despite the fact that Defendants did not physically have a presence in the forum state, this Court concludes they transacted business under the § 2307.382(A)(1). Alternatively, the claims of

misrepresentation and omissions are grounded in the documents which were sent to Ohio and upon which Liberte ultimately determined to go forward with the purchase. Viewing the allegations in the light most favorable to the Plaintiff, the omissions contained in those transmissions are sufficient to come within the purview of § 2307.382(A)(3).

    B. Due Process Analysis

Next, the Court must consider whether specific jurisdiction exists to comport with the Due Process Clause as set forth below:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 380 (6th Cir. 1968). As noted by the Sixth Circuit in *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721-722 (6th Cir. 2000):

> This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. There is a difference between what *World-Wide Volkswagen* calls a mere "collateral relation to the forum State," and the kind of substantial relationship with the forum state that invokes, by design, "the benefits and protections of its laws." An understanding of this difference is important to the proper application of the "purposeful availment" test.

In this instance, the communications between the Liberte and the Defendants and representations therein were the catalyst which lead to transactions resulting in commission payments to the Defendants. Assuming that Liberte took ownership of the policies but failed to pay for the policies, Defendants arguably had an action against Liberte in the forum state of Ohio. Considering the representations upon which Liberte is alleged to have relied and the resulting purchase of policies, it cannot be said that the relationship between Defendants and forum state

7

was random or attenuated. Rather, through its conduct and sales derived therefrom, the Defendants appear to have reaped benefits from the forum state as well as the protections of law therein. Thus, it would appear that Defendants availed themselves of causing a consequence in Ohio.

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe,* 89 F.3d at 1267. As applied to this action, it is clear that Plaintiff's claims against Defendants arise from their contacts and resulting transactions and payments for the four policies. Liberte placed its investors in these viatical investments which ultimately were deemed worthless as they were tainted with fraud.

The third prong requires the Court to consider whether "the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state." *Calphalon*, 228 F.3d at 724. Factors which a trial court may consider include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe,* 89 F.3d at 1268.

It is safe to say that Ohio has a strong interest in the sale of worthless insurance policies to an Ohio entity which then marketed them as valid investment vehicles to investors. While the Defendants are located in Illinois, there is nothing to suggest that Defendants are unable to defend an action in this forum. The interest of the forum state is significant given that the Liberte investors are now a certified class in this forum and hope to obtain some measure of relief in the *Liberte* litigation.

Therefore, upon consideration of the factors under *Mohasco*, the Court finds that the Plaintiff has established sufficient contacts by the Defendants with the forum state.

## CONCLUSION

Accordingly, the Court finds the Plaintiff has established a *prima facie* case of personal jurisdiction over these Defendants. For the reasons stated above, the Defendants' motions to dismiss (Doc. Nos. 9 and 19 ) are denied.

The Court will conduct a telephone case management conference on March 13, 2006 at 9:30 a.m.

IT IS SO ORDERED.

    S/ *David A. Katz*
    DAVID A. KATZ
    SENIOR U. S. DISTRICT JUDGE